WELLS COVERLY AND GUSTAVUS TUCKERMAN *v.* JOHN H. BRAYNARD ; CHARLES CARPENTER AND PORTER HINMAN *Trustees.*

*Purchaser.    Summoning of partners as trustees.*

One who purchases goods for his own benefit is liable for them, though he purchase them upon the credit of another, with his consent, and without disclosing his own interest in them.

Where the persons summoned as trustees are summoned only as partners, the effects or credits in the hands of one of them individually are not attached and cannot be holden.

BOOK ACCOUNT. On the 8th of May, 1851, the defendant entered into a written contract by which he agreed to peddle for his brother L. A. Braynard, who was to furnish a cart, horse and harness, and pay the defendant $20 per month and his expenses ; and on the 1st of May, 1852, a new contract in writing was made by which the defendant was to peddle for his brother during the following year, and receive, as his pay, one-half of the profits. He

commenced peddling immediately after the date of the first contract, representing himself as the employee of L. A. Brainard, and continued until the fall after the date of the second contract, when, without any leave or permission, he took the goods out of the peddler's cart, and put them into a store in Charleston, and commenced and continued trading in the name of the said L. A. Braynard until the 1st of May, 1853, without the knowledge of the said L. A. Braynard.

About the 1st of May, 1853, the defendant started for Boston, and saw his brother, the said L. A. Braynard, at Thetford, where he told him he had been selling the goods at said Charleston, in a store, and asked him if he wished him to go on trading for him for a year to come. They agreed that the defendant should go on and sell the goods for the said L. A. Braynard, the defendant having one-half the profits for his services. Immediately thereafter the defendant went to Boston and purchased goods at different houses, all of which were charged to L. A. Braynard, and forwarded to the defendant at Charleston.

Several weeks after the goods reached Charleston, they were attached on a debt against L. A. Braynard which was contracted by the defendant, and thereupon he wrote to the said L. A. Braynard that the goods were attached, and he could not trade. The debt upon which the goods were attached was settled by Porter Hinman's note, and the goods were turned out to him by the defendant as security ; there was more than enough to pay the debt then in suit and the defendant received the avails of the overplus.

Previous to 1851, the defendant had been in trade with his brother, J. Braynard, under the name and title of J. & J. H. Braynard, and had failed, and their creditors, since their failure, had been entirely unable to secure their debts against them. The debt in dispute was contracted at the time the defendant went to Boston, after seeing L. A. Braynard, about the 1st of May, 1853 ; and the goods purchased of the plaintiffs were charged on their books to L. A. Braynard.

At the time of the making of the contract, in May, 1852, L. A. Braynard claimed that the defendant owed him ; and during the

whole time the defendant was peddling and trading in the name of L. A. Braynard, he paid the said L. A. Braynard thirty dollars in shingles, and that was the only payment he made him after he commenced peddling for him.

The auditor reported that he was satisfied that the reason the defendant peddled and traded in the name of L. A. Braynard instead of his own was, if possible, to avoid costs being made him on debts due from J. & J. H. Braynard, and that he had the entire benefit of the goods bought of the plaintiffs.

Upon the foregoing facts and report, the county court, June Term, 1855,—UNDERWOOD, J., presiding,—rendered judgment for the defendant, to which the plaintiffs excepted.

The summons to the trustees in the plaintiffs' writ was as follows : " and you are further commanded to summon Charles Car-" penter and Porter Hinman, partners in business under the firm " C. Carpenter & Co., both of Charleston in the county of Or-" leans, trustees of said John H. Braynard, to appear before said " court, at the time and place aforesaid, and make disclosure, ac-" according to law, of the goods, chattels, rights or credits of the " said John H. Braynard, which the said trustees may have in their " hands or possession."

Each of the trustees disclosed, that the said firm of C. Carpenter & Co. had no effects or credits of the principal defendant in their hands or possession, but it appeared from the disclosure of Hinman, and the commissioner found that the said Hinman was, upon the morning of the day upon which the plaintiffs' writ was served, individually indebted to the principal defendant, but that he paid him that day, and before receiving the copy of the writ which had been left at his place of business for him, the amount of said indebtedness ; that before that payment, he was informed .by the plaintiffs' attorney of the issuing of the writ, and that he supposed it was served before that time ; and that the money would not have been paid at the time it was but.for the information given by the plaintiffs' attorney, and that the object of the payment at that time was to avoid being held as trustee. The commissioner found that the said Hinman was chargeable as trustee if the above notice from the plaintiffs' attorney was sufficient, taken in connec-

tion with the other facts in the case, and if summoning the partners as such, was sufficient to hold the individual members of the firm.

The county court adjudged, *pro forma*, that the trustees were not, nor was either of them liable,—to which, also, the plaintiffs excepted.

*J. H. Prentiss* for the plaintiffs.

*J. L. Edwards* for the defendant and trustees.

The opinion of the court was delivered by

REDFIELD, CH. J.  In regard to the principal action, if the defendant was the real purchaser of the goods, for his own benefit, he is undoubtedly liable, notwithstanding he purchased them on the credit of another, by the consent of such person, without disclosing the fact that he was himself the real party.  And it seems to us, upon a fair construction of the auditor's report, this must be regarded as a case of that kind.  The defendant seems to have been carrying on the business in the name of a brother, for his own benefit.  The judgment is therefore reversed, and judgment rendered on the report for the plaintiffs against John H. Braynard.

In regard to the liability of the trustee, it seems to us he cannot be made chargeable upon the present attachment.  It was decided by this court, (*McKenzie* v. *Ransom*, 22 Vt. 324,) that it was the writ which created the sequestration of property in the hands of the trustee, by delivering the trustee a copy.  Of course, then, the attachment or sequestration of property would not go beyond the property described in the writ, as applied to the general law upon the subject of the liability of trustees.  If different trustees are summoned generally, they are made liable for all their debts to the principal debtor, both joint and several; but not for partnership effects held by other partners, unless such effects are specifically described.  *Pettes* v. *Spalding*, 21 Vt. 66.

The writ, in the present case, expressly requires the officer to summon the trustees, naming them, as partners in business under the firm of C. Carpenter & Co., to make disclosure of the goods, effects, &c., in their hands.  This, upon any fair construction, can

signify nothing more or less than the goods, effects and credits in their hands as such partners. Any other construction would be forced and unnatural, and we should not be prepared to adopt it, as it would certainly be liable to mislead in other cases, however it may have operated in this case. And however much the trustee Hinman may have labored to evade the attachment, he certainly cannot be made liable for effects in his hands not attached. And by the express terms of the writ, the attachment is limited to partnership effects. It is obvious the writ was not drawn with the remotest reference to any effects in the hands of either partner in his individual capacity. And although there may be some things in the case, which look like a shift of partnership effects, yet we do not revise in this court the finding of the facts in trustee cases. And the commissioner says, in express terms, that he only finds Hinman liable upon condition that summoning the trustees, in their partnership capacity, is sufficient to hold them individually, and Hinman swears expressly that he owed the $500 individually. We think, therefore, unless we overrule the cases above cited, the judgment in favor of the trustees must be affirmed.