CHARLES M. SPENCER *v.* TOWN SCHOOL DISTRICT OF HARTFORD.

May Term, 1913.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed October 13, 1913.

*Schools and School Districts—School Buildings—Construction— Action for Materials Furnished—Liability of Undisclosed Principal—Charge on Books—Conclusiveness.*

In assumpsit against a town school district for the materials furnished for the construction of school buildings, evidence *held* to make a question for the jury as to whether the building committee elected by the town treated the work as abandoned by the contractor and assumed to provide for the completion of the building.

P. S. 983, providing that towns shall maintain suitable schoolhouses, and that the location and construction thereof shall be under the control of the board of school directors, does not prevent the town from constructing them through a building committee elected by it, especially in view of P. S. 993, providing that the board of school directors shall have power to purchase sites, erect schoolhouses, or sell buildings or sites, when authorized by the vote of the town so to do.

Where a town voted to adopt the report recommending the construction of a school building, elected a committee to carry it into effect, and instructed the school directors to pay the bills incurred upon the approval of the building committee, the powers of the building committee did not cease upon the making of the contract for the erection of the building, but upon its abandonment by the contractor, could complete the work in behalf of the town.

Where a town upon abandonment by the contractor of a contract for the construction of a school building authorized the contractor's agent to complete the work as the agent of the town, plaintiff who furnished materials to such agent could recover from the town therefor, although at the time the materials were delivered he was not aware of the situation.

Where, after the construction of a school building had been abandoned by the contractor and was being completed by the town, plaintiff furnished materials for the building and charged therefor in his account against the contractor, that was not conclusive that the credit was given to the contractor.

· ASSUMPSIT.  Plea, the general issue.  Trial by jury at the
June Term, 1912, Windsor County, *Butler*, J., presiding.  Ver-
dict directed for the defendant, and judgment thereon.  The
plaintiff excepted.  The opinion states the case.

*William W. Stickney, John G. Sargent, Homer L. Skeels*
and *Ernest E. Moore* for the plaintiff. ·

*William Batchelder* and *James G. Harvey* for the defend-
ant.

MUNSON, J.  The suit is brought to recover for building
materials furnished on the order of one F. C. Woodward, and
used in the completion of a school house which was being built
for the town of Hartford.  The town had a contract with Hor-
ace H. Tozier, of Lynn, Mass., for the construction of two school
buildings, and Woodward had charge of the work and a power
of attorney to act for Tozier in matters relating to this contract.
The controversy arises upon the plaintiff's claim that Tozier had
abandoned the contract, and that the town had taken upon it-
self the completion of the building and arranged with Wood-
ward to go on with the work.  The plaintiff rested his case upon
the exhibits presented and the testimony of Woodward and him-
self, and on motion of the defendant a verdict was directed in
its favor.

The case presented by the testimony of Woodward is this.
In February, 1908, when the building was about ready for the
inside finish, Woodward spoke to A. A. Watson, a member of
the building committee, about the progress of the work and
Tozier's situation regarding it; and a meeting of all the com-
mittee was thereupon had, in which the matter was presented
and considered.  Tozier had then received his eighty per cent.
on the work done, and there were outstanding bills to be met.
Woodward asked for money, saying he was being pushed on
the unpaid accounts and had received no money from Tozier;
and the committee said they could not give him any more money
under the terms of the contract.  Woodward then said that he
could not go any further with the work as Horace H. Tozier,
unless he could have the twenty per cent. held back under the
contract, and the committee still said that they could not pay
over any more money under the contract.  Woodward then said

that as far as Tozier was concerned the job was finished; that he could not go any further as Horace H. Tozier, having nothing to go on with; and that unless the committee made some arrangement to go on with the building themselves he should have to turn it over to the bond company. The attorney of the town was then called into the conference, and further conversation was had, in which Woodward was asked what the cost of completing the building would be, and replied that it would probably be about twelve thousand dollars. Woodward also claimed that there should be an allowance of thirty-five hundred dollars for the increased cost of labor and material, as provided in the contract; and said that if they would pay over, for the purpose of defraying the cash expenses, the twenty per cent. held back on the contract, and this thirty-five hundred dollars, he could go ahead with that money and complete the buildings, but that there would then be several bills outstanding that some one would have to pay, and that he did not care to go any further unless somebody would stand behind it. The committee finally told Woodward to go on and get the material and finish the building, and they would stand behind it; and directed him to superintend the work, and draw his own compensation on the pay-roll, the same as he had been doing. Woodward then suggested that for certain reasons stated it would be better to carry the business along in the name of Tozier, and the committee agreed that it would be better, and instructed him to do so. All the committee took part in the discussion, and concurred in the conclusion arrived at. Woodward informed Tozier of this arrangement, and he assented to it, and had nothing further to do with the job. The papers showing the payments made by the town were not introduced, but it appeared from Woodward's testimony that the manner of payment was this. As the work progressed Woodward obtained architect's certificates which he took to the building committee, and this committee gave him orders on the school directors, upon presentation of which the school directors gave him orders on the town treasurer, and these were presented to the town treasurer for payment and paid. It appeared from the plaintiff's testimony that Woodward told him of the arrangement he had made with the committee some time in May, and that he afterwards had a telephone conversation with Watson, in which he asked him for some money on his bill, and was told that they wanted to pay

the bills, but did not have money enough, and would have to call another town meeting.

We think this statement discloses evidence which tended to show that the building committee was justified in treating, and did treat, the work contracted for as abandoned by the contractor, and assumed to provide for the completion of the building by the town. But the town contends that it had no power to intrust the erection of this building to such a committee, and that if its vote did confer any authority upon the committee that authority was exhausted when the contract with Tozier was made.

P. S. 983 reads: "A town shall provide and maintain suitable school houses, and the location and construction of the same shall be under the control of the board of school directors." P. S. 993 reads: "Said board shall have power to purchase sites, erect school houses or sell buildings or sites, when authorized by a vote of the town so to do." The first of these sections is a reenactment of a provision which was contained in the chapter on the town system, when the adoption of that system was optional with the towns. R. S. §603. By No. 20, Acts of 1892, the town system was established throughout the State; and by §19 of No. 21, passed at the same session, and entitled in part, "An act to regulate and adjust certain existing school laws to the town system of schools," the power of the directors regarding school houses was made dependent upon the authorization of the town, as is now provided in P. S. 993, quoted above. It certainly cannot be said, in the face of this provision, that the authority of the school directors over the construction of school houses, by virtue of P. S. 983, is such that the town is powerless to act in that behalf.

Nor do we think the authority given the committee ceased with the procurement of the contract for the erection of the building. The town voted to adopt the report recommending the construction of the building, elected this committee to carry the foregoing into effect, and instructed the school directors to pay the bills incurred under the foregoing votes upon approval of the same by the building committee. The vote of the town would not be carried into effect until the building was completed for use, and the manner of carrying it into effect was left to the discretion of the committee in the first instance.

We do not deem it necessary to support our conclusion, already announced, that there was a case for the jury, by taking up in detail the defendant's argument to the contrary. The main contention is seemingly based upon the assumption that inasmuch as the work contracted for continued to go on in the name of Tozier, the further relations of the parties connected with the work cannot be found to have been otherwise than what they purported to be. But it was for the jury to say whether there was in fact such an arrangement as was claimed, notwithstanding the form given the transaction. The defendant emphasizes the fact that all the material furnished by the plaintiff was charged in the account opened with Tozier; and insists that the plaintiff could not recover in the absence of proof that he furnished the goods on the credit of the town through Woodward as the agent of the town. If Woodward, from the time of this interview with the committee, was in fact buying for the town with authority to do so, the plaintiff could recover of the town for materials subsequently delivered, although not aware of the situation at the time of the delivery. *Carney* v. *Dennison,* 15 Vt. 400; *Coverly* v. *Braynard,* 28 Vt. 738. As regards the materials charged after the plaintiff was advised of the claimed arrangement, it is enough to say that the form of a charge is not conclusive as to the person to whom the credit was given. *Scott* v. *Shipherd,* 3 Vt. 104; *Goodrich* v. *Drew,* 10 Vt. 137. Counsel comment upon the indefiniteness of the language of the committee as given by Woodward, and insist that it does not amount to an authority to purchase on the credit of the town. But the language testified to, in the connection and circumstances in which it was used, was fairly capable of the construction claimed for it by the plaintiff, and it was for the jury to determine what meaning was attached to it by the parties to the conference.

*Judgment reversed and cause remanded.*